LATTON v. CRAWFORD. See Case No. 18,-296.

LATTON v. RAINEY. See Case No. 18,296.

LEGAL PROCESS—CHARGE TO GRAND JURY IN RELATION TO THE OBSTRUCTION OF LEGAL PROCESS. See Case No. 18,250.

LEWIS (BELL v.). See Case No. 18,231.

## Case No. 18,308.

### In re LINDSLEY.

### BARNEY v. DE KRAFT.

[2 Hayw. & H. 430.] [1]

Orphans' Court, District of Columbia, March 21, 1863.

INFANTS—WARD OF CHANCERY—EXCLUSIVE JURISDICTION OF COURT.

In all cases where an infant is a ward of chancery, no act can be done affecting the person, property or estate of the minor, unless under the direction expressed or implied of the chancery court itself.

Overruling a mandate of the circuit court.

[Proceeding for the appointment of a guardian for Samuel C. Barney, Jr., and others, minor children of Samuel Chase Barney.]

PURCELL, J. In the above cause this court, on the 25th day of January, 1863, pronounced a final decree appointing Dr. Harvey Lindsley, (at discretion,) guardian to the above minor children, the court being of the opinion that Samuel Chase Barney had lost his marital rights as husband and natural guardian by the decree of divorce of Jasper county, in the state of Iowa, in equity in the district court. By that decree he was forever separated from his wife, and the custody of the said minor children was taken from him and given to the mother. It appears on the face of the decree that the court was a tribunal of competent jurisdiction both over the parties and the subject matter, and that said decree was duly and properly authenticated according to the act of congress in such cases made and provided, and this court held that the divorce was sufficient to exclude Samuel Chase Barney from the guardianship of the property of the said children, without reference to the other facts against him in the case. Also that inasmuch as the said decree of divorce declared that Samuel Chase Barney had received timely notice of the pending of the suit, by the proper publication required by law, and notice sent to his residence; it could not be inquired into collaterally by this court, and authorities were cited to that effect, and that such a decree was not ex-parte. This court at the same time stated another fact, which was entitled to much consideration, to wit, that the will of Edward De Kraft, by whom the whole estate in question was devised, the father of Mary E. De Kraft, who intermarried with the said Samuel Chase Barney, and who was the mother of said minor children, expressly declared

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

that "no husband of his daughter should ever at any time control the estate so devised." From this decision the said Samuel Chase Barney appealed to the circuit court of this district, and by that court the decision of this court was reversed. [Case No. 18,230.] An appeal was then taken by J. W. De Kraft, next friend of the children, to the supreme court of the United States, and was dismissed by that tribunal for the want of jurisdiction. [2 Black, 704.]

The circuit court (the opinion delivered by Judge Merrick) in reversing the decision of this court, made and elaborately discussed three points: 1st. That the decree of divorce rendered in Iowa could not be received in evidence for any purpose in the present controversy. 2nd. That the will of Edward De Kraft did not apply to the personal custody of the minor children, but only to the property, and that although the language of said will was clear and explicit that "no husband" of the daughter should at any time control the estate, yet as natural guardian, Samuel Chase Barney, the father, was entitled to preference in the control of said property, provided he gave sufficient bond and securities as natural guardian. 3rd. That the statute of Maryland, of 1798, in reference to the removal of guardians by the orphans' court, did not apply to Samuel Chase Barney as natural guardian.

In reference to the points thus considered by the circuit court, and upon the soundness of their decision, it would perhaps be unbecoming for this court to comment, although it may not be amiss to quote the express language of the sections of the statute of Maryland of 1798, which was held by the circuit court (in their 3rd and last point) not to apply to the present case. In subchapter 12, c. 101, of that statute, different classes of guardians are mentioned: "natural guardians" and "testamentary guardians." Then subchapter 15 provides that "the court (orphans') may upon application of an infant, or any person in his behalf, suggesting improper conduct in any guardian whatever, either in relation to the care and management of the property and person of the infant, inquire into the same, and at their discretion remove such guardian and make choice of another, who shall give security and conduct himself in the manner herein before prescribed, and shall receive the property and the custody of the ward." Could language be more comprehensive or explicit? This statute is in force in this district, and it expressly provides that the orphans' court may remove "any guardian whatever" for improper conduct, either in regard to the person or property of the ward, clearly embracing all guardians; and this has been the opinion of one of the ablest jurists, both of this District and the state of Maryland. On the 2d of March, 1863, the circuit court issued their mandate from their clerk's office, directing this court to cite Samuel Chase Barney, to give bond with sufficient securities to be approved by this court, &c., &c. Said mandate was delivered to the clerk of this court on the 4th of March, 1863, the day after the circuit court was abolished by congress.

The circuit court was the proper appellate tribunal, and this court would feel bound to respect its mandate, but it appears from this certificate, under seal of the clerk of that court, who was also clerk of the court of chancery, that on the 24th of February, 1863, a bill in equity had been filed in behalf of said minor children, who were then in the custody of Dr. Harvey Lindsley, their duly appointed guardian by this court, the property being also in his possession. Said bill alleging unfitness of said Barney, because gross immorality and incompetency rendered him unfit to have the custody of the said minor children, or to have the management of their property, consequently the said minor children became "wards in chancery" from the filing the said bill, and the issuing the process thereon and service on said Samuel Chase Barney, on the 26th of February, which proceedings operated as a supersedeas to the action of all other courts and persons. (It was stated to this court and not denied by the opposite counsel, that the circuit court had agreed to hear an argument, and examine authorities as to the propriety of having ordered the mandate, but did not, owing to some misunderstanding between the court and counsel, R. S. Coxe, Esq.) The above doctrine is very clearly stated by Judge Story in his very able work upon Equity Jurisprudence. Volume 2, §§ 1352, 1353. He says: "Wherever a suit is instituted in the court of chancery relating to the person or property of an infant, although he is not under any general guardian appointed by the court, he is treated as a ward of the court, and as being under its special cognizance and protection."

In all cases where an infant is ward of chancery, no act can be done affecting the person or property, or state of the minor, unless under the express or implied direction of the court itself. Every act done without such direction is treated as a violation of the authority of the court, and the offending party will be arrested upon proper process for the contempt, and compelled to submit to such orders and such punishment by imprisonment as are applied to other cases of contempt. See, also, Wellesley v. Duke of Beaufort, 2 Russ. 20, 21. In this case the rights of the father as natural guardian were involved, and he was by the court adjudged unfit to have the custody of his children. Goodall v. Harris, 2 P. Wms. 561; Butler v. Freeman, Amb. 302; 2 Bligh (N. S.) 137.

Thus it will be seen that by the foregoing high authorities should this court regard the mandate issued by the late circuit court, or "do any other act affecting the person, property or state of the minor" from the time they became "wards of chancery," it would be guilty of contempt of the court of chancery, and may not the late circuit court have ren-

dered themselves liable, the mandate having been issued subsequent to the filing of the said bill in behalf of the minor children? "Filing a bill in chancery on behalf of infants makes them wards of court," says Maddox in his Chancery Practice. Volume 1, p. 432. See, also, the many authorities referred to in the margin by the learned author. Indeed, the circuit court, in their opinion already referred to, say that the court of chancery affords ample relief in the case of minors, when properly invoked. But if any doubts existed as to the principle in chancery, as above stated from the foregoing authorities and facts, they were removed on the awarding of the injunction on yesterday, the 20th of March, by the Hon. D.

K. Carter,[1] chief justice of the supreme court of the District, which was filed by John W. De Kraft, as next friend of said minor children, which arrested the said mandate ordered by the late circuit court, and which was brought officially to the view of this court. It is therefore ordered and decreed from the foregoing authorities and facts, that the direction contained in the mandate above referred to of the late circuit court, to cite Samuel Chase Barney to give bond and security as natural guardian to said minor children, within a reasonable time, is overruled.

[1] This appears to have been the first adjudication in which Chief Justice Carter took part upon entering upon his term of office.

# M.

MACKENZIE (UNITED STATES v.). See Case No. 18,313.

McQUEWAN (BLOOMER v.). See Case No. 18,242.

MADDOX (ASHLEY v.). See Case No. 18,227.